[No. 3372.]

## McPHERRIN v. PAUL.

1. TAX TITLES—*Compliance with Statute.* Whoever asserts a claim to lands under tax proceedings must show at least substantial compliance with the statute.

No presumption is made in his favor.

2. TAX TITLES—*Are not Founded in Equity.* The statutes in such cases are of necessity penal in their nature. Therefore such statutes should be strictly construed and substantially complied with.

3. PUBLIC OFFICER—*Estoppel to Plead His Own Neglect of Duty.* Defendant to a bill to quiet title to lands pleaded a tax title. Held that though plaintiff was the treasurer of the county at the time of the tax sale, and the proceedings upon which it was founded, there being no suggestion of intentional wrong, on his part, he was not estopped to plead his own official irregularities to defeat the tax title.

4. VOID DEED—*Right of Land Owner.* The owner of lands which have been sold for the non-payment of a tax, without compliance with the statutory requirements, has simply the right of redemption. Such right follows the land and vests in every purchaser from him, even though such purchaser was the treasurer of the county, through whose lapses and irregularities the tax proceedings are defeated.

*Appeal from Phillips District Court.* HoN. H. E. BURKE, Judge.

Mr. JOHN S. BENNETT, Mr. JOHN F. MAIL, for appellant.

Messrs. MUNSON & MUNSON, for appellee.

Presiding Judge Scott delivered the opinion of the court.

This is an appeal from the district court of Phillips county in an action by appellant, plaintiff below, to quiet title to the sw¼ of sec. 30, twp. 7 n., r. 45 w.

The plaintiff claims title by mesne conveyance from the United States. The defendant claims under a tax deed issued by the county treasurer of Phillips county under date of January 17th, 1906.

The plaintiff in his replication to the answer of the defendant alleges irregularities and non-compliance with the requirements of the law in relation to tax sales and to the issuance of tax deeds thereunder, which if proven, would be sufficient to invalidate the tax deed in question.

It appears from the record that plaintiff was the county treasurer of Phillips county at the date of the tax sale and of the proceedings therein and thereunder.

The tax deed, which appears to be regular on its face, recites that the land was struck off to the county on the last day of the tax sale occurring in 1900, and for the taxes of 1899, no other bid having been offered; that the certificate of sale was on the 13th day of February, 1905, duly assigned and transferred by the county to the defendant, Paul. The tax deed in question was issued to him on the 17th day of January, 1906. The consideration paid by Paul for the transfer of the tax certificate appears to have been Fifty-three and 80/100 ($53.80) Dollars; the taxes, interest and penalty for which the land was sold, amounted to Nine and 27/100 ($9.27) Dollars. The court declined to receive or consider evidence affecting the validity of the tax deed for reasons set out in the opinion as follows:

"The court finds that the treasurers deed, or tax deed, of the defendant Paul in evidence, is a deed that is good upon its face, and that the only evidence offered to show that the deed was void, to show the invalidity of the deed, is evidence offered to show that the deed was void for the reason that the county treasurer, who is the plaintiff in this case, had not performed the duties devolving upon him by law; that before this evidence could be admitted, the court would have to hold that a public officer may neglect his duties and failed to comply with the law, and failed to do the things which the law makes mandatory, and after going out of office, purchase property and take advantage

of his own wrong and his own neglect to the detriment of those who had relied upon his official acts. I think it is perfectly clear that such a determination should not be made. This court has heretofore at a former session held that a county treasurer could not do these things, in a case that was very carefully presented upon written briefs and arguments and very carefully considered and investigated. If this could be done, then any sheriff in the discharge of his duties could fail to conduct execution sales according to law and lead men to believe in the validity of the execution sales, and after going out of office himself purchase the title which was supposed to be foreclosed by such execution sale and beat the sale because of his own wrong. The court holds that this cannot be done, and for this reason refuses all the evidence offered to show that the defendants title in this case is void by reason of the official neglect of the plaintiff, and renders judgment for the defendant according to his answer and cross complaint."

Judgment was thereupon rendered quieting title to the land in question, in the defendant, Paul.

No actual fraud or intentional wrong on the part of McPherrin, while acting as county treasurer, is alleged in the pleadings or suggested in the proof. The certificate of sale was not purchased by the defendant Paul from the county for more than four years after McPherrin ceased to be county treasurer, and the tax deed was not issued for more than five years after such sale. McPherrin's deed for the property bears date of July 10th, 1905, several months prior to the issuance of the tax deed

relied on, although it appears that a prior and confessedly invalid tax deed was issued to Paul on the 13th day of February, 1905.

It will be thus seen that if inferences are to be considered, there can be no inference of intentional wrong upon the part of McPherrin while acting as county treasurer, under this state of facts, but quite the contrary. Hence if no intentional wrong is proven, and no intentional wrong may be rightly inferred, it is not clear how McPherrin can be said to have taken advantage of his own wrong.

But tax titles are not founded in equity. The statutes in such cases are essentially and of necessity penal in their nature. The attendant expenses are penalties; the universally high rate of interest is a penalty; and finally the loss of the property taxed, in case of failure to redeem from sale, is a penalty.—*Black on Tax Titles,* Sec. 360; *Blackwell on Tax Titles,* Sec. 121 (5th Ed.)

Therefore it is just that such statutes like all penal statutes, should be strictly construed, and substantially complied with. They are purely for the enforcement of collection, and are sustained solely upon the ground of public policy, arising from the necessities of government. The claim of the defendant must rest upon a compliance with the requirements of the statutes in relation to tax sales and subsequent proceedings thereon, and it is generally held by the courts in such cases that the requirements of the statutes must be strictly, or at least sbstantially complied with. Paul can be in no better position to plead the equitable doctrine of estoppel than could the county, had it been permitted under the law to have acquired title. Beside

there was a clear duty resting upon the defendant Paul, at the time he acquired the certificate and tax deed to the land. An investigation then would have disclosed whatever irregularities that may now appear.

Mr. Blackwell in his work on Tax Titles, sec. 121, says:

"Nor can the purchaser complain of this rule; the terms upon which a valid title can be had are set forth in the law, and it is his duty to inquire if those terms have been fulfilled. He is bound to see to it (as against the land owner) that the official agents of the government have acted according to their authority; his ignorance of the defect will not protect him, the rules of negotiable paper do not apply to tax titles, the purchaser gives but a fractional consideration, the equities are against him."

The authority cited by counsel for McPherrin seems to fairly state the law as it applies to this case:

"The rule, that officers will be presumed to have done their duty, does not extend to agents, appointed by the legislature pro hac vice, to sell lands for the payment of the owners debts; the correctness of their proceedings must be affirmatively proved, in order to sustain a title under a sale by them. Nor does it extend to a case where a title is made under a tax sale; there the party is held to peculiar strictness in proving all the facts which confer jurisdiction to make the sale, and show the sale to have been regularly made. 'When a person seeks, by a purchase of a valuable property for a trifling sum, at a tax sale, to cut off the title of the owner, it behooves him to see to it, that the

proceedings have all been in substantial accordance with the requirements of law, and that the proper evidence of the same has been preserved. * * * Courts will not aid in supplying fundamental defects in such a case by presumptions. *Throop on Public Officers*, sec. 560.''

In the absence of any appearance or charge of intentional wrong-doing upon the part of McPherrin, while acting as county treasurer, we are not able to see how he may be distinguished from any other purchaser of the title, and entitled to whatever protection the law may afford. Neither do we understand why the purchaser of a tax certificate in such case, may be relieved of any of the duties or obligations otherwise imposed.

The right of McPherrin in this case is simply the right of redemption, a right which must follow the land taxed. Therefore, if such right of redemption still exists, it can be in the plaintiff only, and the defendant cannot be heard to complain of its exercise.

Upon principle, to invoke the plea of equitable estoppel as against the plaintiff in this case, would seem to be as unjust, as from an examination of the defendants brief, and our own investigation of the authorities, it appears to be unprecedented.

The judgment is reversed, and the case remanded.

All the judges concurring.

WALLING, J., not sitting.